# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LILLIAN P. IANNINI,<br>    Appellant,<br><br>v.<br><br>RONDA J. WINNECOUR, Chapter 13<br>Standing Trustee,<br>    Appellee. | Civil Action No. 2:12-cv-00225<br><br>Judge Mark R. Hornak |
| RONDA J. WINNECOUR, Chapter 13<br>Standing Trustee,<br>    Appellant,<br><br>v.<br><br>LILLIAN P. IANNINI,<br>    Appellee. | Civil Action No. 2:12-cv-00226<br><br>Judge Mark R. Hornak |

## **MEMORANDUM OPINION**

**Mark R. Hornak, United States District Judge**

This case arises on cross-appeal[1] from a Memorandum Opinion and Order of the United States Bankruptcy Court for the Western District of Pennsylvania (the "Bankruptcy Court") dated December 14, 2011. *In re Iannini*, 460 B.R. 676 (Bankr. W.D. Pa. 2011) ("*Iannini III*"). The principal matter for the Court to address in this cross-appeal is whether the Bankruptcy Court had jurisdiction to grant, in part, an application for counsel fees recoverable from the debtor's estate. The Court concludes that it did not, and for the reasons that follow, will vacate the Bankruptcy Court's December 14, 2011 Order.

---

[1] Because both parties filed an appeal separately, the cross-appeals are docketed at separate civil actions. For purposes of resolving each of the appeals, the Court has consolidated the actions in accordance with Fed. R. Bankr. P. 8002.

## I. BACKGROUND

On March 26, 2009 the debtor, Lillian P. Iannini (the "Debtor"), filed a voluntary bankruptcy petition under Chapter 13 of the United States Bankruptcy Code. Dkt. No. 2:12-cv-225, ECF No. 6 at 2; Dkt. No. 2:12-cv-225, ECF No. 4 at 5.[2] In July 2009, the Debtor filed an adversary proceeding against Deutsche Bank National Trust Company (the "Bank"), alleging that a prepetition sheriff's sale of the Debtor's real property was an avoidable fraudulent conveyance. ECF No. 6 at 2. On December 3, 2009 the Bankruptcy Court granted the Bank's motion to dismiss for lack of subject matter jurisdiction, which was affirmed on appeal by this Court on May 24, 2010. *See In re Iannini*, No. 10-55, 2010 WL 2104244 (W.D. Pa. May 24, 2010) ("*Iannini I*"). The Debtor then appealed the district court's order affirming the Bankruptcy Court to the U.S. Court of Appeals for the Third Circuit. ECF No. 6 at 2.

While that appeal was pending before the Third Circuit, the Debtor's Chapter 13 case was dismissed on August 26, 2010 for failure to make the required payments under the approved plan. ECF No. 6 at 3. On October 22, 2010, the Bankruptcy Court denied the Debtor's motion to reconsider dismissal of the Chapter 13 case. *Id*; ECF No. 4 at 5. On December 21, 2010,[3] counsel for the Debtor, David A. Colecchia ("Counsel"), filed an application for counsel fees in the amount of $17,809.22 for legal services rendered in the adversary proceeding against the Bank. ECF No. 4 at 5. Ronda J. Winnecour, acting as the standing Chapter 13 Trustee (the

---

[2] These documents are on this Court's docket.

[3] Counsel for the Debtor made various attempts to file his fee application for legal services rendered in the adversary proceeding. The initial fee application was filed on November 23, 2010 – nearly three months after the case was dismissed on August 26, 2010, and one month after the motion to reconsider dismissal was denied on October 22, 2010. Two applications for compensation were filed on December 2, 2010 to address corrective entries. A corrective fee application was filed again on December 7, 2010 and was dismissed for noncompliance with certain local rules on December 8, 2010. Another fee application was filed on December 21, 2010. The Bankruptcy Court entered an order requiring counsel to amend the December 21, 2010 fee application to identify time keepers and to adjust the hourly rate for an associate to the amount at which that associate's time was actually charged. That amended fee application was filed nearly ten months later on September 8, 2011, after the Bankruptcy Court's hearing on the fee application. *Iannini III*, 460 B.R. at 678, n.2.

"Trustee"), noted and filed an objection to that fee application on January 11, 2011. ECF No. 6 at 3. With the appeal from the dismissal of the adversary proceeding still pending, the Bankruptcy Court deferred action on the counsel fee application until the Third Circuit rendered its decision.

On July 29, 2011, our Court of Appeals dismissed as moot the Debtor's appeal of the dismissal of the adversary proceeding because the underlying Chapter 13 case had been dismissed. *In re Iannini*, 435 F. App'x 75 (3d Cir. 2011) ("*Iannini II*"). Following that decision, the Bankruptcy Court held a hearing on the fee application on August 24, 2011, and Colecchia filed an amended fee application on September 8, 2011. *Iannini III*, 460 B.R. at 678, n.2. An Order granting fees to Debtor's counsel was entered on December 14, 2011, in which the Court awarded Debtor's counsel $9,228.75 in fees, after taking into account the paid retainer and allowable fees under the local rules, and $1,016.31 in expenses.[4] Counsel and Trustee filed a timely appeal and cross-appeal, respectively, and the matter, having been fully briefed, is ripe for disposition.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over these appeals pursuant to 28 U.S.C. § 158(a). The primary issue presented on appeal is whether the Bankruptcy Court had subject matter jurisdiction to hear the claim for attorney's fees after the bankruptcy case had been dismissed.[5] The "Bankruptcy Court's findings of fact are reviewed only for clear error, while legal determinations are reviewed *de novo*." *In re Heritage Highgate, Inc.*, 679 F.3d 132, 139 (3d Cir.

---

[4] The total fees requested by Debtor's counsel were $21,551.50 plus expenses of $1,027.72. *Iannini III*, 460 B.R. at 678. The Bankruptcy Court reached its decision on awarding fees and expenses after examining the petition and reducing the hours and expenses for those not allowable in the normal course of providing legal services in the adversary proceeding.

[5] While not raised by the Bankruptcy Court, subject matter jurisdiction cannot be waived, and counsel does not assert that the Trustee has somehow abandoned the issue. *See In re Caterbone*, 640 F.3d 108, 111 (3d Cir. 2011).

3

2012). Our Court of Appeals has consistently held that lack of subject matter jurisdiction may be raised at any time, including for the first time on appeal.[6] *See, e.g., Brown v. Phila. Hous. Auth.*, 350 F.3d 338, 347 (3d Cir. 2003).

## III. DISCUSSION

Like other federal courts, bankruptcy courts are courts of limited jurisdiction. *In re W.R. Grace & Co.*, 591 F.3d 164, 175 (3d Cir. 2009). Generally speaking, bankruptcy courts have subject matter jurisdiction only over disputes that could affect the administration of the bankruptcy estate. *In re Ragland*, Nos. 05-18142 & 05-31361, 2006 WL 1997416, at *4 (Bankr. E.D. Pa. May 25, 2006) (citing *Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999)). In determining whether a bankruptcy court has the ability to determine a dispute, this Court need only decide whether the proceeding is "related to" the bankruptcy. *Id.* A dispute is related to the bankruptcy case if it impacts the estate "by increasing or reducing estate property, by increasing or reducing claims, or by affecting the priority of claims." *Id.*

However, once the bankruptcy case has been closed, disputes arising post-closure of the underlying case, including applications for counsel fees, cannot have an effect on the administration of the estate. *Id.* at *4 (quoting *Walnut Assocs. v. Saidel*, 164 B.R. 487, 491 (E.D. Pa. 1994) ("The court finds that where a bankruptcy case is closed and the estate no longer exists . . . the court is without jurisdiction to entertain any proceedings, irrespective of whether those proceedings are defined as 'core' or related 'non-core' proceedings.")). This principle applies with equal force to dismissed cases. *Id.* at *5; *In re Smith*, 866 F.2d 576, 580 (3d Cir. 1989) ("[T]he dismissal of a bankruptcy case should result in the dismissal of 'related proceedings'

---

[6] The Bankruptcy Court noted in its Opinion that its jurisdiction to rule on the fee application was not at issue. *Iannini III*, 460 B.R. at 678. Unfortunately, the Trustee did not raise arguments related to the fee application's mootness or a lack of subject matter jurisdiction in her opposition to the fee petition, Bankr. Dkt. No. 136, and made only passing reference to a mootness argument at oral argument to the Bankruptcy Court. Bankr. Dkt. No. 182, 19-20.

4

because the court's jurisdiction of the latter depends, in the first instance, upon the nexus between the underlying bankruptcy case and the related proceedings."). Thus, a bankruptcy court, in the normal course, has no jurisdiction to hear such post-dismissal disputes. *Id.* at 5.[7]

Here, Debtor's counsel filed his initial, albeit non-compliant, application for counsel fees in December 2010, nearly three months after the dismissal of the underlying bankruptcy case and just over one month after the Bankruptcy Court denied Debtor's motion to reconsider such dismissal. In fact, the application for counsel fees related to legal services rendered in the adversarial proceeding against the Bank, and that proceeding was initially dismissed in December 2009, a dismissal affirmed by this Court in May 2010. The record is devoid of any evidence that Debtor's counsel filed for compensation, or requested the Bankruptcy Court to hold open its jurisdiction over the case and fee application pending the appeal, at any time before dismissal.

In any event, a bankruptcy court has the ability under 11 U.S.C. § 349 to retain jurisdiction over the administration of the estate in its dismissal order, if it finds cause to do so. *In re Ragland*, 2006 WL 1997416, at *6; *In re Orfa Corp. of Phila.*, 170 B.R. 257, 269 (E.D. Pa. 1994) (quoting *In re Pocklington*, 21 B.R. 199, 202 (Bankr. S.D. Cal. 1982)). Section 349(b)(3) provides that property of the bankruptcy estate revests in the entity that had possession prior to commencement of the bankruptcy case, unless the court, for cause, orders otherwise. Courts may determine the propriety of compensation in an underlying bankruptcy case post-dismissal by explicitly retaining jurisdiction. *See In Re Quaker Distributors Inc.*, 189 B.R. 63, 66 (Bankr.

---

[7] This result has been reached in courts outside of the Third Circuit. *See In re Lawson*, 156 B.R. 43, 46 (B.A.P. 9th Cir. 1993) ("The bankruptcy court does not have jurisdiction, however, to grant new relief independent of its prior rulings once the underlying action has been dismissed."); *Matter of Querner*, 7 F.3d 1199, 1201 (5th Cir. 1993) ("as a general rule the dismissal or closing of a bankruptcy case should result in the dismissal of related proceedings") (citing *In re Carraher*, 971 F.2d 327 (9th Cir. 1992)).

5

E.D. Pa. Nov. 29, 1995) (bankruptcy court retained jurisdiction over compensation in its initial dismissal order); *Matter of Mandalay Shores Co-op. Housing Ass'n*, 60 B.R. 22, 23 (Bankr. M.D.Fla.1986) (dismissal of Chapter 11 case did not divest bankruptcy court of jurisdiction over professional fee application because court explicitly retained jurisdiction); *Matter of Samford*, 125 B.R. 230, 234 (E.D.Mo. 1991) (when dismissing the case, the bankruptcy court retained jurisdiction to determine the disgorgement of counsel fees under section 329).

However, where the court does not explicitly retain such jurisdiction, the court thereafter presumptively lacks jurisdiction over the issue. *See In re Ragland*, 2006 WL 1997416, at *6 ("neither dismissal order retained jurisdiction . . . . Accordingly, it would appear that this court has no power to award those funds."); *In re Matthews*, No. 10-16869-MDC, 2012 WL 33213, at *2 (Bankr. E.D. Pa. Jan. 6, 2012) (court lacked jurisdiction to award counsel fees even though fee application was filed prior to case's dismissal because bankruptcy court did not retain jurisdiction); *In re M.O.D., Inc.*, 170 B.R. 465, 466 (Bankr. M.D. Ala. 1994) (bankruptcy court had no jurisdiction over fee application filed after the case was dismissed where the dismissal order did not retain jurisdiction over any estate property); *Matter of Talandis*, 95 B.R. 108, 110-11 (Bankr. S.D. Iowa 1989) (ruling that the court had no jurisdiction to consider fee application without express retention of jurisdiction in order of dismissal). In this case, the Bankruptcy Court did not retain jurisdiction over the bankruptcy case or the funds paid to the Trustee.

The fee application in question was filed well after the administration of the estate was terminated and nearly a full year after the dismissal of the adversary proceeding. As the courts in *In re Ragland* and *In re Lewis* noted, debtors' counsel are in the unique position to know when debtor is failing to make plan payments and that dismissal is a likely result for such failure.

6

Counsel waited until well after the proceeding in the bankruptcy court had concluded. There is no economy to be had in stretching to reopen that proceeding after the fact.

Counsel also well knew that his legal fees were accruing in the adversary proceeding and he could have notified the Bankruptcy Court and the Trustee of this fact at any time before the dismissal of the underlying bankruptcy case. In fact, when the Trustee argued that this fee application was moot, given the timing of the application and exhaustion of any estate funds,[8] Counsel conceded that he would have a hard time overcoming that legal principle. Bankr. Dkt. No. 182 at 21-22.

Counsel argues that the law in the lower courts in the Third Circuit on the jurisdiction for bankruptcy courts to hear applications for fees after dismissal is "hopelessly fractured." ECF No. 5 at 8. Counsel candidly cites to two opinions holding that where a fee application is filed after a case is dismissed and jurisdiction was not specifically retained, the bankruptcy court lacks jurisdiction to award fees. *In re Ragland*, 2006 WL 1997416, at *6; *In re Lewis*, 349 B.R. at 113.

Counsel then cites to two cases for the proposition that bankruptcy courts may review fee applications post-dismissal. However, these cases are readily distinguishable from the case at hand. In *In re Quaker*, the court in its dismissal order explicitly required counsel to file their fee applications by a certain date, thus at least implicitly preserving jurisdiction to later decide the fee issue. 189 B.R. at 66. In *In re Gore*, the court reopened the case after it had been closed in order to address counsel's failure to comply with his statutory duty to disclose his fee

---

[8] Notably, the dismissal Order of August 26, 2010 did specifically provide that "Debtor(s) remain legally liable for all of their debts as if the bankruptcy petition had not been filed." Bankr. Dkt. No. 111. Whether or not Debtor's counsel is owed fees for the engagement of his legal services in the adversary proceeding is based in theories of contract law that our Commonwealth courts are well equipped to handle. *In re Ragland*, 05-18142, 2006 WL 1997416 (Bankr. E.D. Pa. May 25, 2006) ("it is clear that this law firm could proceed in state court against its former clients to seek recovery of its fees for bankruptcy services rendered in this forum."); *In re Kent Funding Corp.*, 290 B.R. 471, 477-78 (Bankr. E.D.N.Y. 2003) (bankruptcy court declined to vacate dismissal order to determine post-dismissal fee application because the issue could be adjudicated in state court).

arrangement and receipt of fees. No. 07-211-3REF, 2008 WL 5049915, at *2, 8 (Bankr. E.D. Pa. 2008). The court reopened the case in order to disgorge from the attorney money that was wrongfully acquired in the course of the bankruptcy proceedings. Unlike this case, *In re Gore* deals with funds actually received by counsel and a subsequent disgorgement for wrongful conduct of the attorney committed during the bankruptcy proceedings. Secondly, as discussed below, unlike the situation in *Gore*, this case was dismissed, not closed. *See In re Kent*, 290 B.R. 471, 475-76 (where Chapter 11 case had been dismissed before it was fully administered, case could not later be reopened). Consequently, the Court does not find Counsel's argument persuasive.[9]

Counsel also argues that "if a court loses jurisdiction over determining fee applications at the time of the dismissal, the Court also would lose the authority to disallow unearned or improper fees or to use disallowance of fees as a sanction for attorney misconduct." ECF No. 4 at 9. Fear of this parade of horribles is not warranted. First, as discussed above, a bankruptcy court can retain jurisdiction for cause pursuant to 11 U.S.C. § 349. Secondly, the Supreme Court has recognized that federal courts may exercise ancillary jurisdiction "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent;

---

[9] Even so, the Court recognizes that some courts have held that bankruptcy courts have jurisdiction over post-dismissal fee determinations. *See In re Fox*, 140 B.R. 761, 762 (Bankr. D.S.D. 1992) ("Therefore, even if the order in this case had not retained jurisdiction over matters involving fees, this Court has jurisdiction over the final application filed by Mr. Blake, notwithstanding case dismissal."); *St. Angelo v. Victoria Farms, Inc.*, 38 F.3d 1525, 1533 (9th Cir. 1994) *amended*, 46 F.3d 969 (9th Cir. 1995) ("A court may properly award fees even after a bankruptcy case has been dismissed."). Within our own circuit, *In re Fricker* held that "[the] court has jurisdiction to determine the propriety of the compensation received by Counsel even though this case has been dismissed" because the "court's duty of oversight of fee matters embraces a broad supervisory power over any fees charged in contemplation of, or in connection with, a bankruptcy case." 131 B.R. 932, 937-38 (Bankr. E.D. Pa. 1991). While *Fricker* did "not doubt [the] power to consider the propriety of Counsel's retention of, and possible right to collect, additional fees from the Debtors", *Id.* at 938, the case is factually distinguishable. First, the issue of compensation and a court order for counsel to file an application for compensation arose prior to dismissal. *Id.* at 935-36. Secondly, counsel improperly retained compensation from the client and failed to file a fee application after ordered to do so by the court. *Id.* at 941-42. Thus, not only could it have been said that the court preserved jurisdiction over the matter of compensation, but also the court would have employed the doctrine of ancillary jurisdiction, as discussed below, to consider the matter. Here, in contrast, Counsel remained silent on the issue until well after the dismissal orders.

and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 379-80 (1994) (citations omitted); *see also Peacock v. Thomas*, 516 U.S. 349, 354-60 (1996).[10]

Here, we are concerned only with the latter. Courts are able to invoke ancillary jurisdiction post-dismissal to interpret and effectuate previous decrees. *In re Ragland*, 2006 WL 1997416, at *8; *see also In re Poplar Run Five Ltd. P'ship*, 192 B.R. 848, 859 (Bankr. E.D. Va. 1995) ("A court does, however, have jurisdiction to enforce its own orders under the doctrine of ancillary jurisdiction."); *In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996) ("Bankruptcy courts have inherent or ancillary jurisdiction to interpret and enforce their own orders . . ."). For instance, in *Post v. Ewing*, a district court affirmed that a bankruptcy court's jurisdiction extended beyond the dismissal of a bankruptcy case because the debtors' attorney ignored court instructions and wrongfully acquired fees from the debtors. 119 B.R. 566, 568 (S.D. Ohio 1989). While the court did not explicitly invoke ancillary jurisdiction,[11] the court reasoned that "[i]n this instance, denying the bankruptcy court jurisdiction to enter an Order to see that its prior instructions were followed by [the attorney] would only serve to thwart the goals of the Bankruptcy Code and unjustly enrich [the attorney]." *Id.* at 568-69; *Cf. In re Matthews*, 2012 WL 33213, at *2 (court lacked jurisdiction to award counsel fees even though fee application was filed prior to case's dismissal because bankruptcy court did not make a ruling on application). In this case, however, no order of the court has been violated, no disgorgement

---

[10] "Although *Kokkonen* was not a bankruptcy case, its holding is plainly applicable to bankruptcy courts, for which jurisdiction is also limited." *In re Synergistic Technologies, Inc.*, 213 B.R. 472, 474 (Bankr. E.D. Va. 1997).

[11] This decision preceded *Kokkonen*.

9

of fees for wrongful conduct sought, and there was no retention of on-going jurisdiction[12] in the dismissal order.[13] Applying ancillary jurisdiction in this situation is therefore inappropriate.[14]

Finally, Counsel proposes that

> the wiser course for this Court is to allow a Bankruptcy Court to retain jurisdiction over fee applications even after dismissal or closing of a bankruptcy case. Even if a state court remedy may be available to Counsel, that remedy does not relieve the Bankruptcy Court of the duty to review counsel's fee applications. To hold otherwise would thwart the Bankruptcy Court's ability to reopen a previously closed case.

*Id.* at 7. The statutory grant of authority to reopen a bankruptcy case is found in 11 U.S.C. § 350(b), which allows a closed case to be reopened "to accord relief for the debtor, or for other cause." Counsel's argument is misplaced for three reasons. First, "closed" in the context of § 350(a) refers to when a case is "fully administered and the court has discharged the trustee." 11 U.S.C. § 350(a); *In re Ragland*, 2006 WL 1997416, at * 4. This case was dismissed, not closed, due to the debtor's failure to make the required Chapter 13 plan payments. "[A] dismissed case

---

[12] The path suggested by the *Kokkonen* Court. 511 U.S. at 379-80.

[13] This line of cases demonstrates the various weapons in a Bankruptcy Court's remedial arsenal for dealing with unscrupulous lawyers, thus undercutting Counsel's "protect us from ourselves" argument. A Court could presumably enter an order fixing a date certain for the submission of fee petitions and direct that failure to do so will result in an order affirmatively denying fees. Or, the Court could expressly retain jurisdiction for the purpose of addressing any later-filed fee petitions. Or, the Court could enter a "show cause" directive pre-dismissal as to why fees should not be denied. In short, the mechanisms for the preservation of adjudicative power to address the concerns advanced by Counsel *do* exist, and they exist within the express grants of jurisdiction noted above.

[14] The Court recognizes that the Ninth Circuit and a District Court in the Eastern District of New York have held that a post-dismissal motion to enforce a fee agreement is ancillary to the bankruptcy court's function of adjudicating the estate. That utilization of such jurisdiction is, of course, discretionary. *See In re Elias*, 188 F.3d 1160, 1162 (9th Cir. 1999); *In re Kent*, 290 B.R. at 478. In light of *Kokonnen*, we do not find this principle applicable here. In *Kokonnen*, the Supreme Court was asked to determine whether a district court had the inherent power to enforce a settlement agreement under the doctrine of ancillary jurisdiction. The Court unanimously held that the district court did not have jurisdiction to do so because the stipulation and final order "did not reserve jurisdiction in the District Court to enforce the settlement agreement" and the dismissal order was not imperiled by the alleged breach of the settlement agreement. 511 U.S. at 377, 380. The Court noted that "[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal . . . In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would exist." *Id.* at 381. Here, Counsel did not ask the bankruptcy court to retain jurisdiction in its dismissal order to address the fee petition and there was no other relation of the late-filed fee petition to an existing, pre-dismissal order.

could not be reopened under section 350(b)." 3 *Collier on Bankruptcy* ¶ 350.03, at 350–6 (15th ed. rev.2004) (footnote omitted); *see also In re Income Prop. Builders, Inc.*, 699 F.2d 963, 965 (9th Cir. 1982) ("An order dismissing a bankruptcy case accomplishes a completely different result than an order closing it would and is not an order closing."); *Vergos v. Gregg's Enters., Inc.*, 159 F.3d 989, 991 n. 1 (6th Cir.1998) (explaining that "conversion," "dismissal" and "closure" are all distinct statutory "terms of art employed in the Bankruptcy Code").

Secondly, 11 U.S.C. § 350(b) states that a case may be reopened "to accord relief *for the debtor*, or for other cause." (emphasis added). Counsel asks this Court to reopen the case not to accord relief to the Debtor but to provide relief to Debtor's counsel and award fees *against* the Debtor personally or the Debtor's estate.

Third, even if the Bankruptcy Court could reopen a dismissed case, it did not do so here and it is generally accepted that a bankruptcy court has no power to decide a bankruptcy dispute after the case is closed unless it is first reopened. *In re Ragland*, 2006 WL 1997416, at *4; *see also Cook v. Chrysler Credit Corp.*, 174 B.R. 321, 327 (M.D.Ala.1994) ("Absent reopening, there is no longer a bankruptcy estate being administered which could be affected by the present litigation. Therefore, the court does not find the present action to be one which arises under or relates to a Title 11 proceeding. The court interprets 28 U.S.C. § 1334 to contemplate pending bankruptcy proceedings."); *In re Brantley*, 1997 WL 74663, at *1 (Bankr.W.D. Ark. 1997) (holding that an adversary proceeding filed after a debtor was discharged and the bankruptcy case was closed is improper).[15] Finally, the Bankruptcy Court does have the power, for all of the

---

[15] As discussed above, 11 U.S.C. § 349 includes a statutory exception to the general rule that dismissal of a case ends all administration of the bankruptcy case when the court "for cause, orders otherwise." Consequently, in contrast to what Counsel suggests, a bankruptcy court is able to retain jurisdiction pre-dismissal in order to address fee issues after a case's dismissal. However, the Court in this instance did not do so.

11

reasons noted, to "retain jurisdiction over fee applications even after dismissal." In this case, Counsel did not ask that it do so.

IV. **CONCLUSON**

The Bankruptcy Court was without jurisdiction to consider Counsel's application for counsel fees. Any such application, absent the Bankruptcy Court's express pre-dismissal retention of jurisdiction over attorney compensation, should have been filed before dismissal of the underlying bankruptcy case. Therefore, the order of the Bankruptcy Court allowing the partial payment of counsel fees is vacated for lack of subject matter jurisdiction.[16]

An appropriate order will issue.

Mark R. Hornak
United States District Judge

Dated: November 30, 2012

cc: All Counsel of Record

---

[16] Because the order below is vacated, the Court need not decide the second issue presented by Counsel as to whether or not the Bankruptcy Court erred in failing to allow payment of travel time at the full rate charged.